UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| ROBERT K. HOLLOWAY ] | |
|     Petitioner, ] | |
| ] | |
| v. ] | No. 3:08-0103 |
| ] | Judge Trauger |
| GEORGE LITTLE, et al. ] | |
|     Respondents. ] | |

### M E M O R A N D U M

The petitioner, proceeding *pro se*, is an inmate at the West Tennessee State Penitentiary in Henning, Tennessee. He brings this action pursuant to 28 U.S.C. § 2254 against George Little, former Commissioner of the Tennessee Department of Correction, and Tony Parker, Warden at the prison, seeking a writ of habeas corpus.

#### A. Background

In March, 2002, a jury in Dickson County found the petitioner guilty of second degree murder. For this crime, he received a sentence of forty (40) years in prison. Docket Entry No.33-1 at pg.33.

On direct appeal, the Tennessee Court of Criminal Appeals affirmed the conviction. Docket Entry No.33-12. The Tennessee Supreme Court later denied petitioner's application for further review. *Id.*

While his direct appeal of the conviction was pending, the petitioner filed in the Circuit Court of Dickson County a *pro se* petition for writ of error coram nobis. Docket Entry No.33-15 at pgs.9-15. The trial court denied the petition. *Id.* at pgs.37-39. On appeal, the Tennessee Court of Criminal Appeals upheld that ruling. Docket Entry No.33-16.

On August 5, 2004, the petitioner filed a *pro se* petition for post-conviction relief in the Circuit Court of Dickson County. Docket Entry No.33-17 at pgs.7-91. Appointed counsel filed an amended post-conviction petition. Docket Entry No.33-18 at pgs.97-111. Following an evidentiary hearing, petitioner's request for post-conviction relief was denied. Docket Entry No.33-19 at pgs.59-88.

On appeal, the Tennessee Court of Criminal Appeals affirmed the denial of post-conviction relief. Docket Entry No.33-29. The Tennessee Supreme Court would subsequently reject petitioner's bid for additional review. *Id.*

### B. Procedural History

On December 18, 2007, the petitioner initiated this action with the *pro se* filing of a petition for writ of habeas corpus (Docket Entry No.1) in the United States District Court for the Western District of Tennessee. In January, 2008, the case was transferred to this judicial district. Docket Entry No.9.

Shortly after the transfer, the Court granted the petitioner's

2

motion to hold the case in abeyance (Docket Entry No.9-8), so as to allow him an opportunity to pursue the reopening of his post-conviction proceedings in the state courts. Docket Entry No.13. In October, 2008, the petitioner filed a motion (Docket Entry No.22) to reopen the case. The motion also sought leave to file an amended habeas corpus petition. The petitioner's motion was granted in both respects. Docket Entry No.23.[1]

The petition, as amended, presents five primary claims for relief. These claims include :

>    1)   the petitioner was denied the effective assistance of counsel when his attorney
>         a) failed to "investigate, prepare or consult with petitioner prior to trial, sentencing and on appeal";
>         b) did not interview and subpoena material and exculpatory witnesses;
>         c) neglected to submit proof of the victim's propensity for violence;
>         d) failed to impeach the inmate witnesses;
>         e) did not impeach Dr. Charles Harlan, the medical examiner;
>         f) neglected to offer exculpatory evidence in the form of a videotape and a letter penned by the victim;[2]
>         g) failed "to secure the record on appeal with the videotape";
>         h) did not divulge a conflict of interest

---

[1] According to the docket sheet, the petitioner had attached the proposed amended petition to the motion to reopen. The amended petition, however, does not appear in the record. Later, though, the petitioner identified those claims raised in his amended petition. *See* Docket Entry No.40 at pgs.3-4.

[2] The videotape is a recording of an interview the petitioner had with law enforcement officers. The respondents provided the Court with a copy of the videotape. Docket Entry No.73. The videotape, however, is blank.

3

>     with Daniel Stindt, a prosecution witness;
> i) failed to appeal the sentence and submit copies of the pre-sentence report and the sentencing transcript;
> j) did not assist the petitioner in filling out a questionaire for the pre-sentence report;
> k) failed to object to the application of enhancement factors and the use of hearsay statements found in the N.C.I.C. reports;
> l) did not advise the petitioner of his 5th Amendment right against self-incrimination at sentencing; and
> m) failed to offer mitigating proof at sentencing.[3]
>
> 2) the evidence was not sufficient to support a conviction for second degree murder.
>
> 3) the petitioner was a victim of vindictive prosecution and prosecutorial misconduct
>    a) the prosecutor deliberately distorted petitioner's prior criminal record at sentencing for enhancement purposes;
>    b) the prosecutor suppressed exculpatory evidence, i.e., his videotaped interrogation;
>    c) the prosecutor knowingly used a witness (Dr. Harlan) who was not credible and overlooked evidence that the victim had been intoxicated; and
>    d) during the post-conviction evidentiary hearing, the prosecutor made "false and prejudicial" comments.
>
> 4) whether petitioner's claims arising from <u>Apprendi</u>/<u>Blakely</u>/<u>Gomez</u> were preserved under <u>Strickland</u>, <u>Glover</u>, and <u>Griffith</u> and are entitled to plenary review.
>
> 5) whether the petitioner was denied due process and equal protection in state court when the trial court disregarded his motion to reopen post-conviction proceedings.

---

[3] At trial and on direct appeal, the petitioner was represented by Michael Flanagan, a member of the Davidson County Bar.

4

In response to the petition, the respondents filed a motion to dismiss. Docket Entry No.31. That motion, however, was denied as premature when the Court granted the petitioner's motion (Docket Entry No.25) to hold this action in abeyance for a second time. Docket Entry No.42.

On December 16, 2011, the petitioner's motion to restore this case to active status was granted. Docket Entry No.51. The respondents were directed to file an answer, plead or otherwise respond to the petition. Rule 4, Rules - - - § 2254 Cases. *Id.*

Presently pending before the Court are respondents' renewed Motion to Dismiss (Docket Entry No.57) and the petitioner's Motion (Docket Entry No.65) in Opposition to the Motion to Dismiss. Having carefully considered these pleadings and the expanded record, it appears that an evidentiary hearing is not needed in this matter. *See* Smith v. United States of America, 348 F.3d 545, 550 (6th Cir. 2003)(an evidentiary hearing is not required when the record conclusively shows that the petitioner is entitled to no relief). Therefore, the Court shall dispose of the petition as the law and justice require. Rule 8(a), Rules - - - § 2254 Cases.

### C. Analysis of the Claims

**1) Post-Conviction Claim**

The petitioner asserts that he was denied the right to due process and the equal protection of the law when the state trial court disregarded his motion to reopen post-conviction proceedings

(Claim No.5).

A state is not constitutionally required to provide convicted felons with a means by which they can collaterally attack their convictions. Pennsylvania v. Finley, 481 U.S. 551 (1987). Thus, the petitioner's due process claim, which alleges nothing more than an error arising from a post-conviction proceeding, is not cognizable in a § 2254 action. Kirby v. Dutton, 794 F.2d 245 (6th Cir.1986).

**2) Procedurally Defaulted Claims**

A federal district court will not entertain a petition for writ of habeas corpus unless the petitioner has first exhausted all available state court remedies for each claim in his petition. Cohen v. Tate, 779 F.2d 1181, 1184 (6th Cir.1985). While exhaustion is not a jurisdictional requirement, it is a strictly enforced doctrine which promotes comity between the states and federal government by giving the state an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights. Granberry v. Greer, 107 S.Ct. 1671, 1674-1675 (1987). Thus, as a condition precedent to seeking federal habeas corpus relief, the petitioner is required to fairly present his claims to the state courts. Rose v. Lundy, 102 S.Ct. 1198, 1205 (1982). A claim has been fairly presented when the petitioner has raised both the factual and legal basis for his federal claim in the state courts. Fulcher v. Motley, 444 F.3d 791, 798 (6th Cir. 2006). Once his federal claims have been raised in the highest state court

available, the exhaustion requirement is satisfied, even if that court refused to consider the claims. Wilson v. Mitchell, 498 F.3d 491, 498-99 (6th Cir. 2007).[4]

Three instances (Claim Nos.1g,1j and 1L) of ineffective assistance and all four instances of vindictive prosecution and prosecutorial misconduct (Claim Nos.3a-d) were never offered to the state courts for review. *See* Docket Entry No.33-6 (direct appeal); Docket Entry No.33-16 (petition for writ of error coram nobis); Docket Entry No.59-1 (post-conviction); Docket Entry No.44 at pgs.11-12 (petition to reopen post-conviction proceedings).

Unfortunately, at this late date, state court remedies for these claims are no longer available. Tenn. Code Ann. § 40-30-102(a) and (c). As a consequence, by way of procedural default, the petitioner has technically met the exhaustion requirement with respect to these claims. Alley v. Bell, 307 F.3d 380, 385 (6th Cir. 2002)(if an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of federal habeas corpus review).

The exhaustion of a claim via procedural default does not, however, automatically entitle a habeas petitioner to federal review of that claim. To prevent a federal habeas petitioner from

---

[4] In Tennessee, a petitioner need only take his claims to the Tennessee Court of Criminal Appeals in order to fully exhaust his available state court remedies. Rule 39, Tenn. Sup. Ct. Rules; Adams v. Holland, 324 F.3d 838 (6th Cir. 2003).

circumventing the exhaustion requirement in such a manner, the Supreme Court has held that a petitioner who fails to comply with state rules of procedure governing the timely presentation of a federal constitutional issue forfeits the right to federal review of that issue, absent cause for the noncompliance and some showing of actual prejudice resulting from the alleged constitutional violation. Gray v. Netherland, 518 U.S. 152, 162 (1996).

A habeas petitioner can not rely on conclusory assertions of cause and prejudice to overcome the adverse effects of a procedural default. Rather, he must present affirmative evidence or argument as to the precise cause and prejudice produced. Lundgren v. Mitchell, 440 F.3d 754, 764 (6th Cir.2006). To demonstrate cause, the petitioner must show that an objective factor external to the defense interfered with his ability to comply with the state procedural rule. Murray v. Carrier, 477 U.S. 478, 488 (1986). To establish prejudice, there must be a showing that the trial was infected with constitutional error. United States v. Frady, 456 U.S. 152, 170-72 (1982).

The petitioner has offered nothing in the way of cause and prejudice that would justify excusing the procedural default of these claims in the state courts. For that reason, these claims will not support an award of habeas corpus relief. Teague v. Lane, 489 U.S. 288, 297-98 (1989)(denial of a claim is appropriate when the claim was not raised in the state appellate court for review).

8

**3) Fully Exhausted Claims**

The petitioner's remaining claims, i.e., that counsel had been ineffective (Claim Nos.1a-f,1h-i,1k and 1m), that the evidence was insufficient (Claim No.2), and that the petitioner had been improperly sentenced contrary to <u>Blakely</u> (Claim No.4), were fully exhausted on the merits in the state courts.

When a claim has been adjudicated on the merits in state court, the state court adjudication will not be disturbed unless it resulted in a decision contrary to clearly established federal law or involved an unreasonable application of federal law in light of the evidence. 28 U.S.C. § 2254(d); <u>Nevers v. Killinger</u>, 169 F.3d 352, 357 (6th Cir.1999). In order for a state adjudication to run "contrary to" clearly established federal law, the state court must arrive at a conclusion opposite to that reached by the United States Supreme Court on a question of law or decide a case differently than the United States Supreme Court on a set of materially indistinguishable facts. To grant the writ for an "unreasonable application" of federal law, the petitioner must show that the state court identified the correct governing legal principle involved but unreasonably applied that principle to the facts of the case. <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000). In short, state court judgments must be upheld unless, after an examination of the state court judgment, the Court is firmly convinced that a federal constitutional right has been violated.

*Id.* at 529 U.S. 389.

## Sufficiency of the Evidence

The petitioner believes that the evidence was insufficient to support a finding of second degree murder (Claim No.2). This claim was fully exhausted in the state courts on direct appeal of the conviction. Docket Entry No.33-12.

The right to due process guaranteed by the Constitution insures that no person will be made to suffer the onus of a criminal conviction except upon sufficient proof. Sufficient proof has been defined as the "evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." Jackson v. Virginia, 99 S.Ct. 2781, 2787 (1979). When weighing the sufficiency of the evidence to support a criminal conviction, the Court must view the evidence in a light most favorable to the prosecution. *Id.* at 2789.

In Tennessee, second degree murder is defined as "a knowing killing of another". Tenn. Code Ann. § 39-13-210(a)(1). The petitioner was an inmate at the Dickson County Jail. He shared a housing unit with seventeen (17) other prisoners. Among those prisoners was Mark Hall, the victim.

The petitioner testified that the victim approached him and asked to borrow his shank.[5] When he refused, the two inmates began

---

[5] A shank is a prison term referring to a homemade knife or weapon which, in this case, was fashioned from a mop bucket handle. *See* Docket Entry No.33-3 at pg.111.

to argue. Docket Entry No.33-3 at pg.177. The petitioner explained to the jury "So I just sort of lost it at this point, and ran over to him; and - - - because this had been an ongoing process. He'd been bothering me for quite awhile trying to pick a fight; and stabbed him a couple of times." *Id.* at pg.179.

The petitioner admitted that the victim was unarmed and that he followed the victim as he retreated.[6] *Id.* at pgs.192-193. The victim was stabbed at least eighteen (18) times by the petitioner. *Id.* at pg.147. When the victim collapsed from his wounds, the petitioner made the call for help.

Three inmates from the same housing unit testified for the prosecution. Two of these inmates confirmed that the victim was often argumentative with other prisoners. Docket Entry No.33-3 at pg.86 (Offie Dotson); *Id.* at pg.117 (Daniel Stindt). All three testified that the victim was unarmed when the petitioner began stabbing him with a shank. *Id.* at pg.91 (Offie Dotson); *Id.* at pgs.112-113 (Daniel Stindt); *Id.* at pgs.130-131 (Chris Hollis). One of the inmates stated that the petitioner "had killing in his eyes period." *Id.* at pg.92. Another said that the petitioner had the "look of evil" as he told the victim to "take this". *Id.* at pg.116.

The petitioner's defense strategy was one of self-defense. However, the medical examiner testified that the victim was

---

[6] When asked about the victim being unarmed, the petitioner simply said that "He has fear as his weapon". Docket Entry No.33-3 at pg.205.

11

probably stabbed in the back several times. *Id.* at pg.150. That testimony, coupled with the fact that the victim was unarmed, make it abundantly clear that any juror could easily have found the petitioner guilty of second degree murder beyond a reasonable doubt. The state courts, as a consequence, correctly found no merit in this claim.

**Ineffective Assistance of Counsel**

The Sixth Amendment provides that a criminal defendant is entitled to the effective assistance of counsel. McMann v. Richardson, 379 U.S. 759, 771 (1970). To establish a violation of this right, the petitioner bears the burden of pleading and proving that his attorney's performance was in some way deficient and that the defense was prejudiced as a result of the deficiency. Strickland v. Washington, 466 U.S. 668 (1984). Prejudice arises when there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 466 U.S. 694. When considering such a claim, counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Mallett v. United States, 334 F.3d 491, 497 (6th Cir. 2003).

The petitioner first claims that counsel was ineffective for failing "to investigate, prepare or consult with him prior to trial, sentencing and on appeal." (Claim No.1a).

At the post-conviction evidentiary hearing, counsel testified that he had at least five to seven face to face meetings with the petitioner and that he spoke with the petitioner on the telephone many times. Docket Entry No.33-24 at pgs.14-15. The petitioner confirmed at least three face to face meetings with counsel. *Id.* at pg.69. Counsel stated that he reviewed the statements from every inmate present in the housing unit at the time of the murder. He also interviewed some of those inmates. *Id.* at pg.16. Prior to trial, counsel met with and discussed the testimony of the medical examiner, Dr. Charles Harlan. *Id.* at pg.25.

Counsel reviewed a videotape of the petitioner's interrogation and discussed it with him. *Id.* at pg.28. Counsel met with the prosecutor and convinced her to suppress the videotape.[7] *Id.* at pg.29. Counsel developed a defense strategy focusing on the victim's propensity for violence. In addition, counsel inspected the housing unit where the murder took place. *Id.* at pg.47.

Despite the petitioner's misgivings, it does appear that counsel did take steps to investigate, prepare and consult with the petitioner. Accordingly, the state courts' ruling of effective assistance in this regard is not contrary to federal law. Therefore, this claim has no merit.

---

[7] The prosecutor agreed to suppress the videotape because law enforcement officers continued to question the petitioner after he had invoked his right to counsel. Docket Entry No.33-24 at pg.42.

The petitioner's next claim is that counsel was ineffective for failing to interview and subpoena inmate witnesses who would have given exculpatory testimony (Claim No.1b). More specifically, the petitioner argues that counsel neglected to submit proof of the victim's propensity for violence (Claim No.1c).

As noted above, counsel testified at the post-conviction evidentiary hearing that he interviewed some of the inmates from the same housing unit and reviewed the statements of all inmates there at the time of the murder. The exculpatory evidence referred to by the petitioner was the victim's propensity for violence. The evidence at trial, however, showed that the victim did not always get along with his fellow inmates. In fact, on cross examination, an inmate (Offie Dotson) acknowledged that the victim was the aggressor in this incident. Docket Entry No.33-3 at pg.95.

The petitioner offered no witnesses at the evidentiary hearing who could have provided more "exculpatory" evidence for him at trial. Further testimony about the victim's violent tendencies would have been cumulative at best. In light of the overwhelming evidence that the petitioner chased down an unarmed inmate and stabbed him repeatedly, there is little doubt that further evidence of the victim's violent tendencies would have had little, if any, effect on the jury's verdict. Therefore, in the absence of any showing of prejudice, these claims are without merit.

The petitioner has also asserted that counsel was ineffective

14

for failing to introduce exculpatory evidence in the form of his videotaped interrogation and a letter authored by the victim demonstrating his violent attitudes (Claim No.1f).[8]

The petitioner suggests that this evidence was important because it showed that the victim had been taking prescription medication and that he disliked the petitioner. Such evidence would not mitigate the overwhelming proof that the petitioner had stabbed an unarmed victim at least eighteen times with a shank. Therefore, even if counsel had been deficient for failing to introduce this evidence, the petitioner has shown no prejudice arising from such a deficiency. As a consequence, the state courts properly found that counsel was not ineffective in this regard.

Counsel was allegedly ineffective for failing to impeach the testimony of the inmate witnesses (Claim No.1d) and the medical examiner (Claim No.1e). More specifically, the petitioner believes that the inmate witnesses should have been questioned about preferential treatment in exchange for their testimony and that the medical examiner should have been impeached with the dismissal from his former position as medical examiner of Davidson County.

At the post-conviction evidentiary hearing, the petitioner offered no evidence suggesting that the inmate witnesses who testified against him were given any type of preferential treatment

---

[8] The victim's letter is in the record at Docket Entry No.44 at pgs.29-38.

15

in exchange for their testimony. Docket Entry No.33-24. Nor did the petitioner present any evidence showing that the medical examiner's autopsy of the victim was flawed in any way. *Id.* As a result, the state courts correctly found that, even if counsel had been deficient, there was no prejudice arising from the alleged deficiency.

The next instance of ineffective assistance alleged by the petitioner is counsel's failure to divulge a conflict of interest with a prosecution witness, Daniel Stindt (Claim No.1h).

With respect to this claim, counsel testified that Daniel Stindt was not his client. Stindt was the co-defendant of counsel's client. *Id.* at pg.27. Because Stindt was proceeding *pro se*, counsel offered him some arm chair assistance during the course of his case. *Id.* Counsel did not realize who Stindt was prior to trial. *Id.*

Counsel did not have an attorney-client relationship with Stindt. The advice given to Stindt by counsel in no way affected his subsequent representation of the petitioner. In short, the petitioner has failed to demonstrate the existence of a conflict of interest. Accordingly, counsel was not deficient in this regard.

### Sentencing Issues

The petitioner next contends that counsel was ineffective for failing to question his forty year sentence. More specifically, he complains that counsel neglected to object to the application of

certain enhancement factors and the use of hearsay statements found in the N.C.I.C. reports (Claim No.1k). He further argues that counsel was ineffective for failing to offer mitigating factors (Claim No.1m) and should have submitted for appellate review copies of the pre-sentence report and a sentencing transcript (Claim No.1i). Finally, the petitioner urges that his sentence was enhanced in a manner contrary to the Blakely decision (Claim No.4).

On post-conviction appeal, the Tennessee Court of Criminal Appeals addressed the petitioner's ineffective assistance claims related to sentencing as follows :

> From our review, the record supports the
> following facts : First, the state provided
> notice of enhancement factors. Second, the
> petitioner refused to make a statement to
> the official responsible for compiling the
> pre-sentence report. Third, the petitioner
> had opportunity to present mitigating evidence
> when he testified at the sentencing hearing.
> Fourth, the petitioner offered some mitigating
> evidence when he testified that he did not
> have a violent criminal history and acted in
> self-defense. Fifth, the petitioner qualified
> as a Range II multiple offender under Tennessee
> Code Annotated section 40-35-106 and was
> therefore subject to the statutory range of
> twenty five to forty years. Sixth, at minimum,
> the trial court correctly found that the
> defendant had a previous history of criminal
> convictions or criminal behavior in addition
> to those necessary to establish the appropriate
> range. The court also considered the petitioner's
> testimony that he had a non-violent criminal
> history but assigned it little weight. Additionally,
> although not specifically mentioned by the
> trial court, the record clearly supports the
> state's proffered enhancement factor : the
> felony was committed while incarcerated for
> a different felony conviction. As such, the

> record supports the application of at least two enhancement factors, which affords the judge discretion to choose an appropriate sentence within the statutory range. [citation omitted].

Docket Entry No.33-29 at pg.11.

Based upon these observations, the court concluded that, even if counsel had been deficient in his performance at sentencing or on appeal, the petitioner had not shown a reasonable probability that his sentence would have been shortened. This Court agrees with the assessment made by the state courts. In the absence of some showing of prejudice, counsel can not be deemed ineffective in this regard.

We now come to the final issue raised by the petitioner - whether his sentence in some way offends federal law. The constitutional guarantee of a jury trial proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by the jury or admitted by the defendant. <u>Apprendi v. New Jersey</u>, 530 U.S. 466,490 (2000). In 2004, the Supreme Court defined what was meant by the "statutory maximum". The relevant statutory maximum is not the maximum sentence a judge may impose after finding additional facts, but rather the maximum he may impose without any additional findings. <u>Blakely v. Washington</u>, 542 U.S. 296,303-04 (2004).

Following <u>Blakely</u>, the Tennessee Supreme Court issued an

opinion concluding that the Tennessee sentencing scheme did not violate a defendant's Sixth Amendment rights. *See* State v. Gomez, 163 S.W.3d 632 (Tenn.2005)(*Gomez I*). This remained the law in Tennessee until 2007, when the Tennessee Supreme Court held in State v. Gomez, 239 S.W.3d 733 (Tenn. 2007)(*Gomez II*) that a trial court's enhancement of a sentence on the basis of judicially determined facts other than the defendant's prior convictions and admissions did violate a defendant's Sixth Amendment rights.

The petitioner received a sentence of forty years in prison on May 9, 2002. Docket Entry No.33-26. At that time, Apprendi only proscribed a sentence above the statutory maximum. The sentencing range for the petitioner's conviction was twenty five to forty years. The petitioner did not receive a sentence above the statutory maximum. The Blakely decision, which redefined the term "statutory maximum", is not subject to retroactive application. In Re: Will C. Dean, 375 F.3d 1287 (11th Cir. 2004); *see also* Cook v. United States, 386 F.3d 949, 950 (9th Cir. 2004); Leonard v. United States, 383 F.3d 1146, 1148 (10th Cir. 2004); Cuevas v. Derosa, 386 F.3d 367, 368 (1st Cir. 2004). It appears, therefore, that the petitioner's sentence does not offend federal law.

## Conclusion

The petitioner has offered no clear and convincing evidence to rebut the presumption of correctness that must be accorded the factual findings made by the state courts. 28 U.S.C. § 2254(e)(1).

19

Nor has the petitioner demonstrated in what way the legal rationale of the state courts runs contrary to federal law. Therefore, for the reasons stated above, the petitioner has failed to state a claim upon which habeas corpus relief can be granted.

In the absence of an actionable claim, the Court finds merit in the respondents' Motion to Dismiss. Accordingly, respondents' Motion shall be granted and this action will be dismissed.

An appropriate order will be entered.

_____
Aleta A. Trauger
United States District Judge